Filed 2/23/22  P. v. Rodriguez CA2/7
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID DANIEL RODRIGUEZ,<br><br>    Defendant and Appellant. | B303099<br><br>(Los Angeles County<br>Super. Ct. No. KA071098) |

APPEAL from an order of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Reversed and remanded with directions.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews,

Michael Johnsen, Supervising Deputy Attorneys General, Michael J. Wise, Charles S. Lee and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury acquitted David Daniel Rodriguez and Alonso Delgado of the first degree premeditated murder of Frankie Lopez, found both men guilty of second degree murder and also found true special allegations a principal had intentionally discharged a firearm causing Lopez's death and the murder had been committed for the benefit of a criminal street gang. Rodriguez and Delgado were each sentenced to state prison terms of 40 years to life. This court affirmed the convictions on direct appeal. (*People v. Delgado* (May 31, 2007, B187062) [nonpub. opn.].)

Rodriguez petitioned to vacate his murder conviction and for resentencing under Penal Code section 1170.95,[1] attaching to the petition a copy of CALJIC No. 3.02, the natural and probable consequences instruction given at his trial. After appointing counsel to represent Rodriguez and conducting a hearing following issuance of an order to show cause, the superior court denied the petition, finding, "[T]here is sufficient evidence in the record to support an express malice murder theory for purposes of the standard of proof required that would implicate Mr. Rodriguez in the killing of Mr. Frankie Lopez."

We reversed the order denying Rodriguez's petition, holding the superior court had applied an improper standard of proof at the evidentiary hearing. Following the Attorney General's petition for review, the Supreme Court transferred the

_____

[1]     Statutory references are to this code.

2

case to us with directions to reconsider our opinion in light of amendments to section 1170.95 by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022.

Rodriguez again argues the case should be remanded for a new evidentiary hearing at which the prosecution is required to prove beyond a reasonable doubt he is guilty of murder under current law and do so according to the rules of evidence mandated by Senate Bill 775.  For his part, the Attorney General recognizes the superior court "may have" applied the wrong standard of proof but argues any error was harmless.  Because the superior court not only applied the incorrect substantial evidence standard of proof but also relied on inadmissible hearsay evidence to conclude the evidence supported a finding Rodriguez had acted with express malice as a direct aider and abettor of Lopez's murder, it is reasonably probable a result more favorable to Rodriguez would have been reached in the absence of those errors.  (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)[2] Accordingly, we reverse the order denying Rodriguez's petition and remand for a new evidentiary hearing on Rodriguez's eligibility for relief.

---

[2]     The right to a postconviction proceeding for possible resentencing pursuant to section 1170.95 is purely a creation of state law.  We evaluate nonstructural state law error under the harmlessness standard set forth in *Watson, supra,* 46 Cal.2d 818. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195.)  That standard requires us to evaluate whether the petitioner has demonstrated that it is ""'"reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."'""  (*Ibid.*)

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Rodriguez's Conviction for Murder*

On December 25, 2004 at approximately 8:00 p.m., an unidentified man knocked on Luci Garcia's apartment door and asked for Frankie Lopez, her son, by name and said he wanted to speak to him.[3] Lopez, who was standing behind his mother when she opened the door, followed the man from the apartment and closed the door. Garcia again opened the door and saw Lopez walking down the hallway with the unidentified man and Delgado, who looked back and made eye contact with her.

Lopez's sister went into the hallway a few seconds after Lopez left the apartment and saw Lopez with Delgado standing on the porch at the end of the hallway. Rodriguez was in the parking lot/alley. The unidentified man was still standing in the hallway. Suddenly, Lopez began running toward his sister. The sister heard a gunshot. A neighbor heard a voice say "Get him, dog. Get him." After a second shot was fired, Lopez fell to the ground. He died from a gunshot wound to the back of his head.

The People's theory of the case was retaliation for an earlier, gang-related shooting of Rodriguez, who, like his codefendant Delgado, was a Pomona Sur Trece gang member. Approximately three weeks prior to Lopez's shooting Rodriguez had fought in the parking lot of Lopez's apartment building with Anthony Coronado, a member of the rival gang Azusa 13, because, according to Rodriguez, Coronado "wanted to come and talk shit to me, and disrespected me." Coronado had previously

---

[3]      Our summary of the evidence is primarily based on the statement of facts in this court's 2007 opinion, which both Rodriguez and the Attorney General have agreed accurately summarized the evidence at trial.

4

lived with Lopez's family for approximately two years and was a friend of Lopez. (Lopez's sister said Coronado was "like a cousin.") A week or two after the fight Rodriguez was shot in the back while he was at a park across the street from the apartment building. Lopez's sister testified she was outside her apartment just before Rodriguez got shot and saw Coronado cover his face with a bandana and run across the street to the park with a rifle. After Lopez's sister heard shots fired, Coronado ran back to Lopez's apartment, where he left the rifle. Although Rodriguez claimed he did not know who shot him, he admitted in a videotaped interview with detectives, which was played for the jury, he knew there would be retaliation for his fight with Coronado.

In a tape recorded police interview with Delgado introduced only as to Delgado at the joint trial, Delgado admitted he had gone to Lopez's door on December 25, 2004, but claimed he had walked back to the car and was opening the car door when the shooting occurred. He insisted he did not know the other men intended to shoot Lopez. Delgado told detectives his "homies" wanted Delgado to come with them to talk to Lopez because "Frankie had everything to do with all this that happened. . . . He was the main person they had to kill for every single thing. . . . The fool that shot [Rodriguez] wasn't even a concern." Delgado explained his fellow gang members' perspective, "Because if we take [Frankie] out, we don't got to worry about this fool coming over here no more doing that, cause' [*sic*] Frankie can't call them and tell them yea sur trece is right there in the park. . . . Frankie can't do that no more. He can't shoot at us, and run and hide in Frankie's house until the police leave again, he can't do that no more." Delgado denied Rodriguez had been

5

present but would not identify the others who were there. He also claimed his friends had told him they were not going to kill Lopez; but Delgado acknowledged he knew they were taking a gun and said to his friends, "You taking a gun for a reason."

The jury was instructed on first and second degree murder; express and implied malice; accomplice liability; and, pursuant to CALJIC No. 3.02, murder as the natural and probable consequence of the target crime of misdemeanor assault (§ 240). The jury found Delgado and Rodriguez not guilty of first degree murder, but guilty of second degree murder. It also found true special allegations a principal had intentionally discharged a firearm causing death and the murder had been committed for the benefit of a criminal street gang. Each defendant was sentenced to an aggregate state prison term of 40 years to life: 15 years to life for second degree murder and an additional consecutive term of 25 years to life pursuant to section 12022.53, subdivisions (d) and (e)(1).

In affirming both judgments on appeal we rejected, among other arguments, Delgado's contentions it was impermissible as a matter of law to base a murder conviction under the natural and probable consequences doctrine on a minor target offense such as misdemeanor assault and, in any event, the evidence was insufficient to support the finding Lopez's murder was the natural and probable consequence of the intended assault. We also refused to adopt Rodriguez's argument that individuals who did not personally use a firearm and were only liable for one of the offenses enumerated in section 12022.53, subdivision (a), under the natural and probable consequences doctrine, should not be considered "principals" for purpose of the firearm

enhancement in section 12022.53, subdivision (e)(1).[4]  We did not discuss any other theory of liability for murder in our opinion.

2. *Rodriguez's Petition, the Evidentiary Hearing and the Court's Ruling Denying the Petition*

Rodriguez, representing himself, petitioned to vacate his murder conviction pursuant to section 1170.95 shortly after the effective date of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).  In a declaration supporting the petition Rodriguez stated, in part, "At trial the jury was instructed on the doctrine of natural and probable consequences CALJIC 3.02 [citation] attached as Exhibit B. Further the District Attorney argued that both defendants were guilty under the natural and probable consequences theory." Rodriguez averred he could not be convicted of first or second degree murder as of January 1, 2019 "due to the enactment of changes to Penal Code 188."  Rodriguez requested the court reappoint as his counsel the lawyer who had represented him at trial.

After appointing counsel and considering briefing from the prosecutor and Rodriguez's counsel, the superior court issued an order to show cause and set a formal hearing pursuant to section 1170.95, subdivision (c).  At the outset of the hearing the court invited argument "as to whether or not there is a theory of liability in the record absent additional evidence that could support the defendant's liability for second degree murder."  The

---

[4]  As we explained, "Because he did not directly aid and abet Frankie's murder (that is, murder was not the target crime), Rodriguez maintains he should not be considered a principal for purposes of the firearm enhancement under section 12022.53, subdivision (e)(1)."

7

court added, "Before I do that, I think, it's uncontested that there is no evidence in the record that could link Mr. Rodriguez to being the actual killer, in other words, the actual shooter. The evidence is insufficient to support that. . . . The issue is whether or not Mr. Rodriguez as a non-shooter can still be held criminally [liable] for the killing of Mr. Frankie Lopez other than on a theory of natural and probable consequences."

After hearing from Rodriguez's counsel, the court made the following observations, "I think the issue that we are now left to resolve is whether or not there is another theory of liability other than natural and probable consequences that could still support beyond a reasonable doubt, which is the standard, liability for second degree murder. . . . The evidence is pretty much uncontested that Mr. Rodriguez did take an active part in setting up that scenario that ultimately resulted in the shooting death. I think more so than anyone else in the record Mr. Rodriguez had a motive to do harm to Frankie Lopez. That is supported by substantial evidence that Frankie Lopez, evidently, harbored a rival gang member from the Azusa 13 gang by the name of Anthony Coronado, which certainly Mr. Rodriguez had issues with . . . ."

Relying on Delgado's statement to police, the court explained its understanding of why, given the ongoing dispute between Rodriguez and Coronado, Lopez and not Coronado was selected as the target. Then, after acknowledging there was an unidentified third person who participated at the outset of the episode, the court stated, "There is absolutely no evidence in the record to support an argument that that person was involved in any way in the killing of Frankie Lopez. But we do know there were at least two people involved, Mr. Rodriguez being one of

8

them."  The court then reasoned one of the two men was the shooter, the second a direct aider and abettor who had shouted, "Get him, Dog," supporting the finding they each had acted with express malice.

Following further argument the court reiterated the significance to it of the "Get him, Dog" comment and stated its tentative finding, subject to any final argument by counsel, was "to find there is sufficient evidence in the record to support an express malice murder theory for purposes of the standard of proof required that would implicate Mr. Rodriguez in the killing of Mr. Frankie Lopez."  Rodriguez's counsel attempted to persuade the court to change its view, asserting, if there was insufficient evidence Rodriguez was the shooter and insufficient evidence to know what role the unidentified third person played, then the evidence was insufficient to prove it was Rodriguez who said, "Get him, Dog."

The court was unconvinced:  "Although it was mentioned in the trial evidence about the third person, there is zero evidence that I have seen that implicated this third person, the person unidentified, as doing anything other than simply being present at the time the shots were fired, which means the evidence points to Mr. Rodriguez being at least at the very minimum a direct aider and abettor because those words can be attributed to him if he is the non-shooter.  If there [are] only two people involved, they were both equally liable for the express malice murder of Frankie Lopez.  So that's my finding.  I think it's supported in the record.  I think the analysis is appropriate.  It is not overreaching in any respect.  So the [petition] for resentencing under 1170.95 is respectfully denied."

### 3. *Rodriguez's Appeal, the Attorney General's Petition for Review and the Supreme Court's Transfer Order*

In an opinion filed in December 2020 we reversed the denial of Rodriguez's section 1170.95 petition and remanded the matter for a new evidentiary hearing. We held section 1170.95, subdivision (d)(3), as enacted by Senate Bill 1437, required the superior court, after issuing an order to show cause, to act as an independent fact finder and to determine whether the prosecutor had proved beyond a reasonable doubt the petitioner could be convicted of murder under current law.

We noted in our opinion that on appeal Rodriguez also argued the superior court's consideration of Delgado's explanation of the rationale for assaulting Lopez, admitted at trial only as to Delgado, was inadmissible hearsay and should not have been considered by the superior court. Because Rodriguez had not objected and the superior court therefore did not have an opportunity to rule on that evidentiary issue, we held it should be addressed in the first instance on remand.

The Attorney General petitioned the Supreme Court for review in Rodriguez's case, noting a conflict in the courts of appeal as to the standard of proof to be applied at an evidentiary hearing under section 1170.95, subdivision (d)(3). Before the Supreme Court decided the issue, the Legislature enacted Senate Bill 775, which amended section 1170.95, subdivision (d)(3), to require use of the beyond-a-reasonable-doubt standard and expressly stated a finding there is substantial evidence to support a conviction for murder is insufficient to prove the petitioner is ineligible for resentencing.

On December 22, 2021 the Supreme Court transferred Rodriguez's case to this court with directions to vacate our prior

10

decision and to reconsider the cause in light of Senate Bill 775 (S266652).

## DISCUSSION

1. *The Superior Court Applied an Improper Standard of Proof*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Lewis* (2021) 11 Cal.5th 952, 957).[5] It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

When, as here, the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).)

---

[5] As amended by Senate Bill 775, the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter.

11

As originally enacted section 1170.95, subdivision (d)(3), provided, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." Senate Bill 775 amended section 1170.95, subdivision (d)(3), to provide, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . . A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

In his supplemental brief filed after the Supreme Court's transfer order, Rodriguez again argues the superior court used an improper substantial evidence standard of proof at the evidentiary hearing. In light of Senate Bill 775, the Attorney General now agrees the superior court must act as an independent fact finder at the section 1170.95, subdivision (d)(3), evidentiary hearing and determine whether the petitioner is in fact liable under the law of murder as amended by Senate Bill 1437 beyond a reasonable doubt, but he does not concede the court here used the incorrect standard.[6] We agree with Rodriguez; the superior court erred.

---

[6] Although reluctant to agree the superior court erred, the Attorney General does acknowledge, "[a]s this Court held in its earlier opinion in the case, the record indicates the trial court incorrectly applied a substantial evidence test below."

12

As discussed, during the hearing the court observed the issue to be decided was whether a theory of liability existed other than natural and probable consequences "that could still support beyond a reasonable doubt" a conviction for second degree murder, and subsequently stated it was required to review the record to determine "whether or not there is evidence in the record beyond a reasonable doubt that could support a murder conviction." Both of those formulations of the standard used the phrase "could support"—the appellate standard of review—not "does support beyond a reasonable doubt" or equivalent language, which would indicate the court had actually found the evidence established Rodriguez was guilty of murder as a direct aider and abettor. Similarly, the court's determination that Rodriguez's motive to commit murder was "supported by substantial evidence" and its statement toward the end of the hearing that Rodriguez "is entitled to be resentenced if, in fact, there is no other evidence in the record that could support any alternative theory," as well as its ultimate ruling, reveal the court's application of the incorrect standard.

2. *The Superior Court's Error Was Not Harmless*

The Attorney General argues, even if the superior court incorrectly applied a substantial evidence standard, any error was harmless.[7] To be sure, as the Attorney General emphasizes,

---

[7] Responding to the Attorney General's supplemental brief, Rodriguez contends the harmless error argument violated California Rules of Court, rule 8.200(b)(2), which limits supplemental briefs after transfer from the Supreme Court to matters arising after the previous court of appeal decision (here, enactment of Senate Bill 775) absent leave of court. Rodriguez also notes in the Attorney General's original briefing he did not

13

the superior court found Rodriguez "most certainly" played an active role in luring Lopez out of the apartment. It was presumably on that basis that the jury found Rodriguez was an aider and abettor to the target offense of misdemeanor assault, which led to his conviction of murder, the nontarget offense, under the now legally untenable natural and probable consequences doctrine. Rodriguez's role at the apartment's threshold, however, does little to justify the conclusion it was he who cried out, "Get him, Dog"—what the superior court determined was the "key piece of evidence"—rather than the unidentified third person who initially knocked on the apartment door and asked for Lopez. (As Rodriguez explains in his supplemental brief, with quotations from the trial record, the prosecutor at trial proceeded on the theory there were at least three people involved in Lopez's shooting.) Contrary to the Attorney General's analysis, the superior court's finding that Rodriguez "could easily be labeled as the aider and abettor" falls far short of a finding beyond a reasonable doubt that Rodriguez was an aider and abettor who acted with express malice.

In addition, in denying Rodriguez's petition the superior court emphasized Rodriguez's motive for revenge, relying in large

---

argue any error in applying an improper standard of proof was harmless. While both of Rodriguez's observations are correct, whether or not raised by a party, we are prohibited by the California Constitution from reversing a judgment unless, "after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; see *People v. Doolin* (2009) 45 Cal.4th 390, 420 ["'[a]ll trial court error under California law is governed by article VI, section 13 of the California Constitution'"].)

part on Delgado's explanation during his police interrogation why Lopez, who was not a gang member, had been targeted for an assault. That evidence, admitted at the joint trial only as to Delgado, is not properly considered in determining whether Rodriguez could be convicted of murder under current law. (See § 1170.95, subd. (d)(3) ["[t]he admission of evidence at the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law"].) In sum, if the superior court had applied the proper standard of proof and governing rules of evidence, it is reasonably probable a result more favorable to Rodriguez would have been reached.

## DISPOSITION

The order denying Rodriguez's petition for resentencing is reversed, and the matter remanded for a new evidentiary hearing applying the correct standard of proof and evidentiary rules in the current version of section 1170.95, subdivision (d)(3).

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

15